UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DANNY CHARLES WASHINGTON** | **CIVIL ACTION NO. 10-0356** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **E. WOODROW WHITTINGTON, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

### RULING

Pending before the Court is E. Woodrow Whittington, Ronnie Lyons, Dennis Cage, and Shirley Maynor's Motion to Dismiss Under Rule 12(b) for Lack of Jurisdiction and Failure to State a Claim ("Motion to Dismiss"). [Doc. No. 7]. Plaintiff Danny Charles Washington did not file a timely brief in opposition to Defendants' Motion to Dismiss. [*See* Doc. No. 8].

**I.   BACKGROUND**

On August 19, 2010, Magistrate Judge Karen L. Hayes issued a Report and Recommendation recommending that Defendants' Motion to Dismiss be DENIED on the ground of lack of subject-matter jurisdiction [FED. R. CIV. P. 12(b)(1)], but GRANTED on the ground of failure to state a claim upon which relief can be granted. [FED. R. CIV. P. 12(b)(6); Doc. No. 10, p. 1]. The Court agrees with and ADOPTS the Report and Recommendation, but issues this Ruling to provide additional analysis of Plaintiff's implied retaliation claim under substantive due process and to amend the analysis of Plaintiff's discrimination claim arising under the Equal Protection Clause. [Doc. No. 10, pp. 7-11].

## II. LEGAL ANALYSIS

### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's pleadings must be facially plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff," *Montoya v. FedEx Ground Package System, Inc.*, 2010 WL 3081504, at *3 (5th Cir. Aug. 9, 2010) (quoting *Sullivan v. Leor Energy LLC*, 600 F.3d 542, 546 (5th Cir. 2010)), the well-pleaded facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

The *Iqbal* "plausibility standard" is not a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In short, the rule is that it must be *plausible* that a defendant has acted unlawfully. *See id.* In deciding whether a plaintiff's complaint makes it plausible that a defendant has acted unlawfully, a court engages in a "context-specific task," requiring it "to draw on its judicial experience and common sense." *Id.* at 1950.

### B. Retaliation Claim Under Substantive Due Process

As the Report and Recommendation notes, "When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments." [Doc. No. 10, p. 6 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008))]. Further, when ruling on a 12(b)(6) motion to dismiss, courts may also "examine . . . documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

In this matter, Plaintiff attached a Motion for Settlement Offer to his Complaint. [Doc. No. 1-2]. Plaintiff additionally incorporated the documents attached to his Complaint by reference.

[Doc. No. 1, p. 2]. In his Motion for Settlement Offer, Plaintiff alleges that he was "threaten[ed] with eviction from the apartment if he complained or attempted any further action." [Doc. No. 1-2, p. 2]. This allegation is not a legal conclusion, but a well-pleaded fact. Thus, under *Iqbal*, 129 S. Ct. at 1949, if it allows the Court to draw the reasonable inference that Defendants acted unlawfully–if this allegation makes it plausible that Plaintiff's exercise of his First Amendment rights was the substantial motivation for the eviction–then the Court must deny Defendants' Motion to Dismiss.

In examining this well-pleaded fact, however, the Court draws on its experience and common sense to determine whether such an inference is plausible. *Id.* at 1950. In light of the facts demonstrated by other documents attached to the Complaint, the Court cannot plausibly draw the inference that Plaintiff's First Amendment activity was the substantial motivation for his eviction. Thus, Plaintiff's implied retaliation allegation under substantive due process fails to state a claim upon which relief can be granted.

The record in this case establishes four First Amendment activities conducted by Plaintiff. First, on April 29, 2009, Plaintiff filed a police report describing an unauthorized entry into his residence by a man known as McMurray and Plaintiff's belief that a Ruston Housing Authority employee provided McMurray with access to the apartment. [Doc. No. 1-4, p. 7]. Second, at some unspecified date after June 7, 2009, Plaintiff reported to police that his residence was burglarized and his car was stolen. [Doc. No. 1-4, p. 8]. Third, on July 13, 2009, Plaintiff visited the Mayor's Office to complain about the above incidents. Plaintiff reported that Housing Authority employee Dennis Cage gave McMurray access to his apartment and that he had informed Housing Authority Executive Director Woody Whittington of this fact. Plaintiff also requested an extension on the

payment of his rent until July 21, 2009. [Doc. No. 1-4, p. 6]. Fourth, on August 7, 2009, Plaintiff filed a formal complaint with the Ruston Housing Authority, which focused on the allegation that Dennis Cage provided McMurray with access to his apartment. In this complaint, Plaintiff made the additional allegations that Ronnie Lyons, Mr. Cage's supervisor, had breached an agreement to change his locks after the initial burglary and that Mr. Whittington "talked to [Plaintiff] like [he] was trash" and as though Mr. Whittington "did not care what had happened to [Plaintiff] or [his] child." [Doc. No. 1-3, p. 5]. Plaintiff also noted that instead of granting him a six-day extension to pay his July rent, Mr. Whittington "filed an eviction." *Id.*

The record does not establish that Plaintiff filed a complaint or undertook any further action against Defendants between his initial First Amendment activity, the police report filed on April 29, 2009, and the alleged retaliatory measure, the first notice of eviction on July 6, 2009. Plaintiff received three additional notices of eviction, in August, September, and October 2009, respectively. [Doc. No. 1-4, pp. 1-2, 4]. Plaintiff's complaints to the Mayor's Office and Ruston Housing Authority occurred after the first notice of eviction and, thus, are irrelevant as possible motives for retaliation.

However, the date on which Plaintiff filed the second police report is unclear. For purposes of this motion, the Court views the facts in the light most favorable to Plaintiff. *Montoya*, 2010 WL 3081504, at *3. Therefore, the Court assumes that the second police report was filed before the July notice of eviction, thereby giving Defendants a possible motive for a retaliatory eviction.[1]

---

[1] If the second police report was filed *after* Plaintiff was given the first notice of eviction, then there would be no plausible motive for retaliation established by the record or pleadings before the Court. Indeed, the Court would have to find it plausible that after the initial police report, Defendants threatened Plaintiff with eviction if he complained or took any further action, that Plaintiff obliged and abstained from further complaint or action, and that Defendants, substantially motivated by Plaintiff's police report months before, decided to retaliate by evicting

Further, although Plaintiff does not specify on which date he was threatened with eviction if he continued to complain or undertake further action [Doc. No. 1-2, p. 2], the Court assumes that such a threat occurred after Plaintiff filed the initial police report,[2] but before Plaintiff filed the second police report or was given notice of eviction.  This favorable assumption allows for the possibility that Defendants engaged in retaliation.  After Plaintiff filed the first police report, one or more of the Defendants could have threatened Plaintiff.  Plaintiff then could have filed the second police report between June 7, 2009, and July 6, 2009.  The threatening Defendant(s) could have then retaliated and issued Plaintiff a notice of eviction.  However, while this scenario is possible, it is not plausible.

Plaintiff conceded in his complaint to the Mayor's Office on July 13, 2009, and in his complaint to the Ruston Housing Authority on August 7, 2009, that he was unable to pay his rent because of damage to his car.  When Plaintiff visited the Mayor's Office, he requested an extension to pay his rent until July 21, 2009.  [Doc. No. 1-4, p. 6].  When Plaintiff filed a complaint with the Ruston Housing Authority, he noted that he had asked Mr. Whittington for a six-day extension to pay his rent. [Doc. No. 1-3, p. 5].

Thus, for Plaintiff's factual allegations to support an inference of unlawful retaliation by Defendants, the Court would have to find the following scenario plausible: (i) at some unspecified date, Plaintiff was warned by an unspecified person to abstain from further free speech activity or face eviction; (ii) this person was in fact one of the Defendants; (iii) this Defendant decided to retaliate by issuing a notice of eviction to Plaintiff after Plaintiff filed the second police report; (iv) Plaintiff, timing their retaliation with Plaintiff's failure to pay his July rent.  The Court finds such a scenario implausible.

[2] The threat must have occurred after Plaintiff filed an initial complaint because Plaintiff alleges that he was threatened with eviction if he undertook *further* action.

this Defendant timed his retaliation with Plaintiff's failure to pay his July rent; (v) Plaintiff's second police report, and not Plaintiff's failure to pay rent, was the substantial motivation for the notice of eviction; and (vi) this Defendant allowed Plaintiff to remain in his apartment from July until at least October, despite Plaintiff's repeated failure to pay rent, and despite the fact that Defendant's substantial motive was retaliation for Plaintiff's First Amendment activities. Although such a scenario is possible, based on this Court's experience and common sense, it is not plausible. Therefore, Plaintiff fails to state a claim upon which relief can be granted.

### C. Plaintiff's Discrimination Claim Under the Equal Protection Clause

The Report and Recommendation finds that Plaintiff did not demonstrate his status as a member of a protected group[3] and does not explicitly consider whether Plaintiff's discrimination claim was based on the infringement of Plaintiff's exercise of a fundamental constitutional right. [*See* Doc. No. 10, pp. 10-11]. However, Plaintiff's Complaint alleges that he was discriminated against because he exercised the fundamental right of free speech:

> Plaintiff and his minor daughter was [sic] evicted from the apartment because he filed a formal complaint with the Ruston Housing Authority and the Mayor of the City of Ruston, and the Ruston Police Department. Because of these complaints Plaintiff is [sic] and was dis-criminated against and wrongfully evicted.

[Doc. No. 1, p. 3]. Equal protection claims which involve the exercise of fundamental rights are analyzed under a strict scrutiny test. *See Sraile v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009); *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008); *cf. Newman Marchive Partnership, Inc. v. Hightower*, 349 Fed. Appx. 963, 965 (5th Cir. 2009) ("If [discrimination] claims do *not* involve a suspect class or a fundamental right, courts review state action using a rational-basis

---

[3] A police report attached to Plaintiff's Complaint lists his race as black. [Doc. No. 1-4, p. 7]. Nevertheless, Plaintiff does not allege that he was discriminated against on the basis of his race. Further, Plaintiff fails to state any facts allowing an inference of racial discrimination.

test.") (emphasis added). Under strict scrutiny, "classifications created by state action which . . . impinge upon the exercise of a 'fundamental right,'" are valid "only when they are precisely tailored to serve a compelling state interest." *Clark v. Prichard*, 812 F.2d 991, 994 (5th Cir. 1987).

However, even though Plaintiff's claim would receive strict scrutiny if properly pleaded, it must first be properly pleaded. For an equal protection claim, Plaintiff must allege differential treatment. *See Angel v. City of Fairfield, Tex.*, 793 F.2d 737, 740 (5th Cir. 1986) (finding the plaintiff's claim deficient in a fundamental-right, equal protection case because the plaintiff did not allege differential treatment).

Although Plaintiff's well-pleaded facts are entitled to a presumption of truth for purposes of a 12(b)(6) motion, Plaintiff's allegation that he was discriminated against because of his complaints to Ruston government officials is a legal conclusion, not a well-pleaded fact. Under *Iqbal*, legal conclusions are not entitled to a presumption of veracity when a court is considering a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, there are no additional facts in Plaintiff's Complaint or its attachments which allow the Court to reasonably infer that Plaintiff was discriminated against because of his free speech activity.[4] Therefore, Plaintiff's discrimination claim under the Equal Protection Clause fails to state a claim upon which relief can be granted.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 7] is DENIED on the ground of lack of subject-matter jurisdiction, but GRANTED on the ground of failure to state

---

[4] Plaintiff alleged in his complaint to the Mayor's Office that, while he was not given an extension to pay his rent, he knew of other tenants who were granted an extension. However, Plaintiff was allowed to remain in his apartment for at least three months after the initial notice of eviction was given. Thus, he effectively received a rent-payment extension.

a claim upon which relief can be granted.

MONROE, LOUISIANA, this 24th day of September, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE